Mr. Carlson? Yes, good morning, Your Honors. I would like to reserve six minutes of my time for rebuttal in this particular case. Your Honors, before you is our appeal of the granting of the motion for summary judgment in favor of SN Commercial and SN Services, and also the denial of our appeal, or excuse me, our motion for summary judgment based upon the statute. What's at issue in this case is somewhat factually related, and certainly one that I think some facts bear review. And of course, obviously, I asked the court, asked me any questions about the circumstances. In 1988, Elmer and Stella Walker, who are now in their late 70s, took out a loan to finance the operations of their hotel located on Lake Chelan. It is an approximately 80-unit hotel. They had trouble paying it back when there were forest fires that wreaked havoc on the area. If I could, just so we can concentrate on the statutory issue, I gather that your clients ultimately got the loan, sold the hotel, and they came out okay, right? Not completely, Your Honor. They had not sold the hotel. They redeveloped a portion of it. They were finally able to get a loan because of changes to the real estate market. So what we're really focusing on here really is construction of the Washington statute, but primarily for purposes of seeing whether you can get fees and damages against SSN and the other party, right? It is the construction or interpretation of that statute. And what you're seeking is the repayment of interest, some fees, and attorney's fees, right? That's correct, Your Honor. How much is that in total? In total, it would be approximately $6 million if all fees were included. We are certainly seeking the repayment of the $3.8 million that we paid at the end of the loan. There was approximately $8 million that was paid in total on the loan. So the statute, if you don't comply with the statute, the penalty against the lender is he loses fees, interest, and is liable for attorney's fees. He doesn't lose the principal, does he? No, he does not lose the principal. The original $3.1 million, Your Honor, they're entitled to keep. There's no argument on that. And how do you get the $6 million from a $3 million loan? Excuse me. It's approximately $6 million with the accrual of interest on the amounts that were paid. As I say, there was approximately $8.5 million, I believe, that was actually paid on the loan. There's a calculation that is in the documentation, and the amount is calculable directly from that. It shows what was interest, what were fees, what was paid with default interest. There were substantial sums that were added on once SN took possession. That will be for the district court if we reverse. Yes, that is something, or you could decide it here as a matter of law since the evidence is before you. Under the circumstances, the real issue is this. The difference between the Fair Debt Collection Practices Act, which is not applicable to this particular case, this was a commercial loan transaction. The definitions under the Fair Debt Collection Practices Act would exclude this particular transaction from any application. The question really is the Washington Statute and the Collection Agency Act as it is applicable. And under the circumstances, the facts are these. This is an entity that is licensed or authorized to do collection business in every state in the union. Which entity are you referring to? I'm referring to SNS because SNS, or SN Servicing as they call themselves, does collection work in every state. They don't deny that anywhere in what they're doing or saying. They were at all times licensed in the state of Washington. Let me talk to you about the licensing. Pardon? The licensing of SNS occurred in the year 2000. The first licensing, yes. The first licensing before the statute regarding exemptions for affiliates that were owned in part or in whole by similar companies. And the licensing continued during that period of time. My question to you is this. It may be in the record, it may not be. But is there a procedure by which a company can become licensed? And then if the law changes and they don't want to be licensed anymore, can they stop being licensed? Or are you licensed like branded in the forehead forever under the Washington Statute? If I may, two answers to that question, Your Honor. First, you can surrender your license. There's no problem with voluntarily surrendering it and giving up your licensure. Two, you can petition the board to change your licensing status. And three, and probably more importantly, I think factually for this case, is that after the change, that is the exemption was passed, they reapplied for a license and got another license in the year 2003. Is that in the record? Pardon? Yes, it is in the record, Your Honor. What's the citation? Pardon? What's the citation? Oh, boy. That is in the record attached, I believe it is, to 108. It's an attachment to Mr. Busey's declaration. And that would be the license application itself as well as, I believe, the public record, because there's actually a search you can do in Washington, and it does show the public record of that license being applied for in the year 2003. Even if we assume that SNS was all licensee or liable or not exempt or however you get down to it, did their two, I think there were two letters, right? Correct. Two letters were sent to your clients. Well, amongst many other collection activities, Your Honor, but those are the two that we're referring to. Those are the two that you're basing your claim on. Those are the two that we're basing our appeal on today, yes. Okay. Those two letters, they don't seem to be anything other than informative to me. Your Honor, there are specific – And that's what the district judge held too? There are specific statutory requirements that must be met by a licensee. This is where it differs directly from the Fair Debt Collection Practices Act. The Fair Debt Collection Practices Act requires the collection of a claim. In this case, a licensee, and they were a licensee, if they send something implying that a claim exists, and that's the way the statute reads very directly. If they simply imply that a claim exists, there are requirements that are in there. And if you look at the initiation of the collection process, it's a lot like receiving your credit card statement. How much do I owe? All of the things that are required there are basically answers to that very simple question, a question that was never answered in this particular case. At all times, we tried to find out what the debt would be. We could never get, even under their calculations, any closer than $50,000. Why is that relevant? Because it says as a strict liability matter in the statute, Your Honor, that if you don't comply with the statute, you immediately go to 450, and you pay according to the terms of what the Collection Agency Act has. They were a licensee. They sent these notices. It's clear that they imply, under any ordinary language, that a claim does exist, and you then go to 450. This was not an isolated transaction, Your Honor. They admit in discovery, and we cite it, there were 1,670 different times that they sent these notices into just the state of Washington, only within a five-year period of time. How is that relevant? This isn't class action, is it? No, it's not a class action, but it is relevant to the Consumer Protection Act, and what it's showing is it's showing collection activity. They are primarily a collection business. If you look at their website and how they held themselves out to the public, it was primarily, if you will, a collection business. They had all underperforming loans. All of their loans, they say there, at first ended in liquidation. They then were able to get them so that all of these underperforming are in default loans, and this loan was in default. I would like to address that. This loan was in default consistently from the time that they received it. The other part of this is- Were they notified they were in default? Were- Were your clients notified- Yes, they were notified that they were in default. They were notified they were in default. At page 58 attached to, I think it's the complaint, I believe it's CR2, you'll find that there is a first notice of default that was sent out by the trustee. That is a formal matter to foreclose on a deed of trust in the state of Washington. That lists a default of the 1998 taxes, for instance. That 1998 default was never cleared. The loan was always in default. The loan was, in addition, always in default, and the district court didn't consider this, was always in default under the payment agreement that came out of the bankruptcy because it charged their approximately $150,000 in total payments for default charges that were imposed because there was nonpayment. Was it SNS that gave the notice of default or someone else? It was listed as SNS and, I believe, SNC. It was actually the trustee, which was Mr. Trementanus's law firm subsidiary, that does those types of notifications as the trustee. Was that part of SNS? It was signed by an officer of SNS, yes. Okay. So your position is that the letter, as long as it, A, if SNS is licensed, and it was. It is. B, the letters cannot make a claim for debt payment unless they comply with the statute, which requires the amount to be set out. That's what's different between this and the Fair Debt Collection Practices Act. If they apply that claim, it exists. Right. They don't have to take any collection action. They don't have to say, you need to pay this. In fact, they talked about workouts in that. So I'm correct in saying as long as there's an implication that there's a debt presently owed. Right. And so what you do is you take a look at the letters and see whether there's an implication there's a debt presently owed. Yes. Now, we're there. Tell me what about these letters show that there was a debt presently owed. Oh, if you look, there are two different letters, Your Honor, one in November, one in December. The December item, which is listed as Exhibit 59 or Page 59, I believe it's to CR2, that is what has been listed. They're collecting there, according to this letter, from four key banks. Remember, the loan was not actually assigned as a matter of writing until January 27th. When this went out, key banks still held the loan. So SM was really collecting for key banks. That was another factor where you can't say they're merely collecting for a related entity. In there, they say that they are getting a fresh new start with your outstanding payments. It says for reinstating your loan to a current, and then it goes on to talk about a workout proposal. You're saying for reinstating your loan to a current status implies the present obligation to pay the loan. Yes. Well, and then it goes down to talk. And then, in addition, it says I'm going to ask opposing counsel to tell me why that isn't correct. I do remember, Senator Mondale. Well, there you go. Don't start casting aspersions. I was just clarifying which side of the line I was on, Your Honor. Anyway, but, yes, it's there. It's a strict liability statute. And, again, this is separation of powers, Your Honor. This was a very judicially active decision to try to take this out of the statute. But, remember, this applies to a $30 collection amount. It applies to a $6 million collection amount. We are talking about a website that talks about a multibillion-dollar collection procedure. We're talking about securitized transactions in this particular case, Your Honor. The very same that are applied to Wall Street today, the very same that we read about every day as one more mortgage problem. And this is an unregulated industry without this. There's no regulation. There's nothing to keep these people from doing the types of things that we would have demonstrated at trial, which were very aggressive collection techniques. I'm not sure I understand correctly. The statute obviously contemplates that certain kinds of entities, if they comply with the statute, are in fact exempt, right? They would be exempt from the licensure requirements. That's correct. Or complying with the Washington State statute. No, I don't agree with that. You don't agree with that? No, I do not. Okay. Once licensed, you're there. Okay. Let's just say what I'm trying to understand is you're basically saying it's an unregulated industry. And what I'm trying to understand is whether the Washington State legislature intended that certain portions of the industry that are not licensed, in fact, as long as they're out of state and they don't have to comply with the statute, they're not going to be covered, right? There are very limited exemptions, yes, from licensing. All right. So it's like most regulatory statutes. There are exemptions. So it seems to me in this case what you're primarily hanging your hat on here is the fact that these folks had a license. Is that a fair statement? Well, they would also qualify as a debt collector. They don't qualify for their exemptions, as I'll go through. My time has just run out if I'm going to use my 16 minutes. You seem to hang a lot on the license issue. But let's just say hypothetically they didn't have a license. Are you contending that they would be covered by the statute? Yes, because the affiliate exemption that they're trying to claim, first of all, they were collecting for Key Bank at that time. They weren't collecting for anybody else. They had an arrangement to sometime transfer the loan in the future. Where in the record is that? My recollection was they were collecting for a trust and family members, extended parts of the family. They did. It went through three stages.  Which they did on January the 27th, approximately one and a half months after the last of the legislative session. The Key Bank portion, was that before the statute was passed or after? The Key Bank portion? I'm sorry. I'm not sure I understand the question. Okay. You mentioned that they were collecting for different entities, starting with Key Bank. Correct. My question is, during the time period when they were collecting by your blights for Key Bank, had the revised statute been passed? Yes. It had been. Yes. And they had reapplied for their license. Okay. And you're saying that under the new law, they were collecting for a non-affiliate. Correct. So whether or not they were licensed from your perspective, they were covered by the act. Well, that's correct. And they were collecting for Christiana Bank. Even in their own documents, Christiana Bank was the person that got paid under the terms of the loan documents. Christiana Bank, an affiliate? No. It's a publicly traded Delaware corporation as shown by, it's an attachment to my declaration, Your Honor, and I'll be happy to give you the actual factual site, but it is a publicly traded company. In fact, in your certification in the brief, in the response brief, they must certify the ownership of the companies. And there they say that it's a publicly traded company. And they were the payee under the check. Well, but the question, the next question that pops into my mind following up on Judge Smith is, when they sent the letters out, were they acting as an affiliated collector? No. They were collecting for Key Bank at that point because Key Bank was the holder of the paper. The first letter, which I think is your Mickelson affidavit. Yes. It was one. November 28th, I believe. November 28th, what year? The year 2003. And you claim at that point they were collecting because it says sold or transferred from Key Bank National Association to S.N. Servicing Corporation. They weren't collecting for Key Bank if the loan had been sold. Well, it hadn't been sold, Your Honor. They had agreed to sell it, but the documents that are in the record show that the loan was actually transferred on January the 27th by signature. And that's January 27th of 2004. I apologize. They just claim they were introducing themselves. Pardon? They just claim they were introducing themselves, saying, hey, it's being transferred, and we're going to do it in the future. And you're disputing that. No, deal with us. You have to deal with us. And Key Bank had already sent a letter saying you deal with them. The question is who were they collecting the loan for because the principal at that point had retended right at that spot. I don't know how they would have divided it, but it's clear that there's a material issue of fact as to whether or not. They didn't ask you to pay anything right there, did they? Yes, they did. They did ask us to pay because, as you see here, they're saying that you have to bring certain payments current. It's in the November letter? In the December letter is where I'm reading, Your Honor. It's for reinstating. I urge you to contact me. Do you agree that in the November letter there was no demand for payment, either direct or implied? No, I think the November letter implied that a claim existed, and that's what the statute says. It doesn't require collection again. It requires that a claim exists. It says the right to collect payments from you has been assigned, sold, or transferred to S.N. Servicing Corporation, a debt collector. A debt collector, yes. Effective November 12th. But by putting on his hat as a debt collector, he's not saying you owe me money. He's saying I'm a debt collector. What in that letter do you say? I think it was your loan was the phrase, Your Honor. I'm sorry, I don't have the letter in front of me. No, no. You are hereby notified of the servicing of your above-reference loan. Yes. That is, the right to collect payments from you has been assigned, sold, or transferred. Yes. Where is there a claim that the loan is in default and money is due right now? It doesn't require, if you will, a default at that point. No, no, no. But where is the intimation that something is amiss in the loan and that some payments must be made? All they're saying is, Next time you owe some money, send it to us. Isn't that what they're saying? They're notifying that they're the ones to receive payments. But again, a licensee and they've implied that a claim exists. That's all that's required. And then you need to list the amount. No, no, no, no. They've implied, they've stated that a loan exists. There's a difference between a loan existing and a claim for payment of that loan then existing. You grant that, do you not? I grant that that is true, Your Honor. But I grant also that that is not the standard or the statute because claim is defined. Claim is defined basically to be any obligation owed. Any obligation. But claim is default, any obligation for the payment of money or thing of value arising out of any agreement or contract. That's 1916 100.5. Correct. But it's an obligation for payment of money. An obligation under a promissory note doesn't exist until the time comes to pay it. Isn't that right? That's correct. I mean, so. They were already behind one payment at that point. But the letter doesn't say there's a claim for payment of your unpaid portion, right? I mean, what I'm trying to get out of you is, is there anything that I am not seeing here in this letter? I don't have that letter in front of me, Your Honor. If you could make a reference to the record. Then we'll look at your brief. Okay. Thank you, Your Honor. I'm well past the time, so I'm trying to reserve something. All right. Okay. Good morning, Your Honors. My name is Ethan Tremontanus, and I represent the Aplese, the SN parties. And I ask the Court to affirm Judge Wheeling's grant of summary judgment. I'd like to start with your opposing counsel indicated at the time these two letters were, these specifically the, let's see, the first letter is dated November 28, 2003, and the second one is December 4, 2003. He's saying that at the time those were sent that the loan itself was in default, that a notice of default had been filed. Do you disagree with that? Absolutely, Your Honor. That actually was filed May 13, 2004, wasn't it? Right. And Mr. Carlson correctly stated that SN Servicing did not send the notice of default. This is at, well, he's got two numbers on it. I believe it's ER 64 or 60. But Mr. Carlson also said that SN Servicing signed the notice of default, which is not true. David New, Vice President of Washington Administrative Services, Inc., signed the notice of default. So Security National Servicing had nothing to do with sending this notice of default. It sent two innocuous letters, the hello letter and what they call the fresh start letter. None of those letters were the type of letter that the Collection Agency Act is meant to regulate. Do you admit that your client was a licensed debt collector as of the sending of both letters? No. You did get a license for SNS in 2000. SN Servicing did obtain an out-of-state collection agency license in 2000 before the Washington legislature changed the statute. All right. And it never withdrew or surrendered that license. But as I understand it, isn't the licensing required to a fee required to be paid yearly? Well, that said, RCW 1916-140 requires an annual renewal fee. And there isn't any reapplication, as Mr. Carlson argued. He cites to that argument, he cites to the affidavit of Joshua Busey, and he has a printout showing that SN Servicing's license was still there. The license was issued to SNS in 2000. Right. Second question, was there any withdrawal or surrender of the license by SNS following taking the license out in 2000? No, Your Honor. Third question, did SNS pay the fee yearly to keep the license in full vigor? That answer is not on the record. But under Section RCW 1916-140, there's a reciprocal provision not requiring a fee of out-of-state collection license fees that are licensed in another state that doesn't charge a fee to the equivalent of an out-of-state collection license. Oh, I see. So you didn't have to pony up a dollar every year, right? That's right. So SN Servicing likely didn't have to do anything, and the license just continued. Now, as a matter of strict statutory construction, if these rules apply to licensees, aren't we bound by this record to find that SNS was a licensee bound by these regulations? No, Your Honor. Why? Because their interpretation of the definition of licensee, which is an entity that holds a license, ignores the Section 110 of the Act, which states that no person shall act, assume to act, or advertise to act as a collection agency as defined in this chapter without first having applied for and obtained a license. So in order to obtain a license and become a licensee, you have to be acting as a collection agency. No, no, no, no, no. The licensing says you can't be a collection agency unless you're licensed, right? Then they say you can be exempted from the license requirement if you are an affiliated company or if you're an out-of-state person who's only taking loans that are not in default. The exemption is to the definition of collection agency or out-of-state collection agency. It's not an exemption to the licensee requirement. So first you have to be a collection agency. What they say is if you are exempted as an affiliate or because you're taking loans that are not in default, out-of-state, then you're not acting as a debt collector. Right. Right. So you don't have to be licensed. Yes. But if you're acting as a debt collector, you have to be licensed. Now, why isn't the simple fact that SNS applied for a license, submitted itself to the jurisdiction of the Washington State regulatory scheme, all we need? Because it properly did that while it was a collection agency. In 2001, the affiliate exemption and all the exemptions from the Federal Fair Debt Collection Practice Act were subsumed into the definition of out-of-state collection agency, making SNS servicing. The whole intent of the legislature was to make affiliates not collection agencies. It would have been much clearer if at that point you said you would have gone to the appropriate agency and said the license we have, we surrender. There's no statutory provision that allows for this surrender. You mean once you've got a license, you're licensed forever? You can't get rid of it? You can't walk in and say to the governor, I don't want to be licensed anymore? Perhaps you can, Your Honor. But maybe out of an abundance of caution, maybe as an administrative matter, we didn't do that. In reality, if you put aside for a moment whether this was an administrative oversight by the company, if the fact that you have a license forever traps you as an out-of-state or rather an in-state collection agency, then basically it means you can never become an out-of-state collection agency just because you had previously been licensed as a collection agency, right? It kind of traps you. That's right, Your Honor. In this court two years ago when the Clark v. Capital Credit Collection Services said, and they're interpreting the federal act in that case, it says we're not going to apply an overly literal, hyper-technical definition to these acts. The Collection Agency Act and its federal counterpart are meant to regulate third-party debt collectors collecting an independent act or a delinquent debt. So this court says when words in a statute are plain and unambiguous, we are not bound by the plain meaning of the statute where its literal interpretation will produce a result demonstrably at odds with the intention of its drafters. In this case, the Washington legislature clearly intended to exempt affiliates like S.N. Services. Let's decide on a Clark case. Clark what? F3rd 162 and the quotes at 1169. I'm sorry. 416? 460. 460. Did you say at 162 or at 1162? At 1162.  And the quotes at 1169? That's right, Your Honor. And in that case, it was interpreting a rule that says a collection agency isn't supposed to call a debtor after the debtor requests that the collection agency doesn't call. The debtor then called the collection agency and asked for some information. The collection agency returned the call, and the plaintiff says, well, that's a violation because we asked that you didn't call us anymore. The court says we're not going to adopt such a hyper-technical interpretation of the statute. Let's assume for discussion purposes only, let's assume for a moment that there is a violation here. What's your comment about the alleged damages that your opposing colleague has stated? I hope you don't get to that issue, Your Honor. Well, I understand that, and I understand that. But we like to cover the whole waterfront here. So what's your take on that? He's saying that he would owe $6 million based upon sending these two letters. On a $3 million loan. And the statute that they are seeking damages under, which is Section 450, says that if there's a violation of Section 250 in the collection of a debt, that's where the district court gets in the collection of a debt, that no party may thereafter collect interest, service fees, anything above principle. So they're simply saying that everything after the first letter, second letter, that was collected other than the principle gets added to damages? No. They're saying that everything they paid after those two letters is their damages. And so what they're arguing, they're requiring the court to ignore the loan documents which say for the first year of the debt you're only paying interest and then you're paying mostly interest. We gave them an accounting of what they paid in the tender and payment agreement, and they paid a total of about $400,000 above principle in the payoff amount. So that's really the amount at issue in this case. So their fee calculation not only includes the interest and the fees, but the principle return. It includes everything they paid over the life of the loan above principle from when they obtained the loan in 1988 or whatever date they obtained it. Long before your folks were ever involved. That's right. So there are the two independent bases for the court to affirm Judge Whaley's grant of summary judgment. And those are? The first is that the Security National Servicing, SM Servicing, is not a collection agency and therefore not subject to the Collection Agency Act. And it's not a collection agency because it's an affiliate? That's right. And is there any other basis? Is it an out-of-state collection agency that is only taking loans which are not past due? I think that there are other exemptions in the Federal Debt Collection Practices Act that may apply to SM Servicing. Well, it's kind of vague, isn't it? There's an exemption for commercial parties in a secured loan transaction. There's an exemption. I'm not asking you to give me an inventory. I'm asking you to give me your best shot. The best shot is the affiliate exemption, Your Honor. And it's consistent with the purpose of the statute. Again, it's to collect third-party debt collectors. The statute's not meant to regulate somebody like SM Servicing who has a continuing relationship with a debtor. And it's evidenced by these two letters that they sent. It's not pay me money now. It's let's get this thing back on track. Well, what do you say to opposing counsel, Mr. Carlson's point, that the first letter in November of 2003, and indeed the second letter in December of 2003, predated the transfer of the loan from, I guess, Washington Mortgage to Key Bank? The loan was transferred in November 12, 2003. This argument that it was... To Key Bank. No, to Security National SNC. The November 12 letter, or I'm sorry, the November, the hello letter, ER 77, says that we are now collecting on the loan that was transferred from Key Bank December 12. That's what the first letter says, yes. That's right. So it was not before. That's right. Now, in that... I don't know if Your Honors have more questions about whether the affiliate exemption applies or whether the two letters violate the collection agency. We're going to cover both. But why do we go to the two letters? Because the affiliate is pretty cut and dry. Tell me why you think that the two letters, if you are a licensee, and therefore liable to follow these regulations, tell me why you think the letters do not violate the rules regarding what letters should have. Okay. They claim a violation of Section 250, subsection 8, which involves a notice or letter that represents or implies that a claim exists. But then they seek damages under Section 450. And 450 provides a remedy only where there is a breach of Section 250 in the collection of a claim. So not only does it have to imply that a claim exists, the letters also have to be a collection of the claim. The first letter... It's a demand for payment. Is that what you're saying? Yes. The first letter doesn't ask for any payment. It merely introduces SN servicing as the loan servicer. It's like a letter that a landlord would send after purchasing an apartment to its tenant, saying, I'm your new landlord, pay your rents to me. There's nothing presently owing. Nothing becomes due... Well, your first letter is kind of... That's a nice letter. You know, that's kind of nebulous. But the second letter talks about getting you a fresh start and you've got outstanding payments. You're right. It introduces SN servicing as loan servicer and says, we notice you've missed some payments. Here are some options now that we're servicing your loan where you can get a fresh start. None of those options are for the payment of money. It's not seeking or demanding any money. Well, wait a minute. When you say, I urge you to contact me today to discuss the following options for reinstating your loan to a current status. A loan that has to be reinstated is not a loan in good standing, is it? It's not. A loan in default. Not in default under the definition of default. No, because you have to give written notice in 10 days thereafter it goes into default. Right. But it is a loan which is other than in good standing. Yes, but that's not the test. The test is whether it's seeking to collect on a claim. Well, it's seeking to collect under the statute if it represents or implies that a claim exists. Isn't that 1916, 250.8? No. 250.8 regulates the type of notices that represent or imply that a claim exists. In order for them to get the damages they seek, the letter has to actually try to collect on that claim. And 10 years ago, the Seventh Circuit analyzed a fresh start letter from S.N. Servicing in the case of Bailey v. Security National Servicing. That letter was arguably more strident than the letter sent in this case because it referred to the borrower's delinquency and had a warning that failure to make further payments would require immediate payment in full of the amounts due under the note. What the court said in that case is the letter does not demand any payment whatsoever but merely informs the borrowers about the current status of their account. That's under the Federal Act, though, is it not? The Seventh Circuit case occurred not under the Washington Act. That's right, but the Federal Act talks about a debt which is defined substantially the same as claims defined under the State Act. And the Washington law, when it's construed, usually looks to the Federal case law to determine what it means? It draws inspiration from the Federal law? Yes, Your Honor, particularly when the terms are the same. And, again, my colleague argues that the Federal law is different because that talks about notices sent in the collection of a debt. But for the remedies that they want under 450, the State Act also talks about the collection of a debt. But there's no state case law that you can cite to us on this statute that looks at a letter like you all sent? There is none, Your Honor. So, again, the Seventh Circuit said about the fresh start letter, surely this is not the type of dunning letter that describes the communication related to the collection of a debt. And that's true when you look at the letter. I mean, it was clearly a letter meant to continue the relationship with the walkers. It wasn't seeking to foreclose the mortgage. It wasn't a notice of default. It didn't even say pay me any money now. It didn't talk about past due dates. It didn't say cousin Vinnie's coming to see you. That's exactly right, Your Honor. And that's what the State Collection Act is meant to cover, those type of collection agencies, which is not what SN servicing is. So you're saying under Section 450, there cannot be violation of the act unless there's an actual collection of the claim, not just the implication that a claim exists? Not exactly. There can be a violation of Section 250 if there's a representation or implication that a claim exists. But what the walkers are seeking, Your Honor, are damages under the remedy provided in 450. The only way that you get that remedy is if the breach of Section 250 happened in the collection of a claim. So you're saying there may well have been a violation of 250, 8, in sending the letter saying that the loan is not in current status, but when you go to get some damages for that failure, you have to prove the additional element that the letter was an attempt to collect the debt under 450. Do I have you right? That's right, Your Honor. Okay. With regards to the affiliate exemption, there's two prongs to the affiliate exemption, that SN servicing only collects for affiliated entities and that its primary business is not the collection of debt. We have submitted a declaration from in-house counsel Bill Fogelman at ER 26, and that declaration was submitted with the initial moving papers. Your procedural question, in Judge Peckman's court, did they have the local rule regarding undisputed statements of fact and a motion of summary judgment? It was Judge Whaley's court in the Eastern District. Judge Whaley's. And we did submit one statement. Then why are we talking about affidavits? Why don't we talk about what your undisputed statement of facts said? The undisputed statement of facts said that SN servicing only collects for affiliated entities and that its primary business is mortgage servicing and not debt collection. And was that a fact which was sustained or buttressed by an affidavit by you? By the – Next question. What did the plaintiffs do as opposed to that? Did they object? Did they put in some facts? Did they create a tribal issue of fact as to either of those two facts in the undisputed statement? Speculation and conjecture. There was no fact to directly rebut those statements by Mr. Fogelman in the statement of undisputed facts, notwithstanding that Judge Whaley gave the Walkers a 60-day continuance to the hearing date to finish discovery on precise information. So I've taken you over your time. Thank you very much. Thank you, Your Honors. Mr. Tomontanos. I took you over time, actually. Mr. – we'll give you a moment to wrap up. Give him a minute, please. First of all, Exhibit 108, page 27, has both licenses listed, including the years that they were issued, and that is their answers to their interrogatories. That's 108. Only for an affiliate, I would only say this. Key Bank is not an affiliate. Christiana Bank is not an affiliate. The Securitize Trust that had other private qualified investors is not an affiliate. They are collecting multiple times from multiple parties and on their own website. We contested exactly what you said in the local Rule 51 statement, Your Honor. In addition, when you take a look at are they attempting to collect a debt, I invite you to look again at the letter, the December letter. At the bottom it says that they are attempting to collect a debt. They say that themselves. It is in, excuse me, page 59 of the exhibit from which I was looking. We are, quote, attorneys are attempting to collect a debt. And that's literally in there because that's part of the validation language that's required under the Fair Debt Collection Practices Act. So even under that act, if they thought it applied, they said, we are attempting to collect a debt. Thank you very much. Thank you, Your Honor. That finishes our calendar for the morning and for the week. The Court stands in recess. And Walker v. S.N. Commercial LLC is submitted. All right.
judges: Bea, Smith, Hood